(No. 41630.—

CHECKER TAXI CAB CO., INC., Appellee, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(THOMAS FISHER, Appel-
lant.)

*Opinion filed March 24, 1970.*

RONAN, CUNNINGHAM & LANNON, of Chicago, (E. T.
CUNNINGHAM, of counsel,) for appellant.

BRODY & GORE, of Chicago, (ROBERT L. BRODY, of
counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

The circuit court of Cook County reversed the Industrial
Commission's award of compensation to the claimant,
Thomas Fisher, and he has appealed.

The facts are not in dispute and the sole issue is whether

the claimant's injuries occurred in the course of his employment. The claimant was a regularly employed taxi driver for the respondent, Checker Taxi Cab Company. He testified that on the afternoon of May 19, 1965, after discharging a passenger at the corner of Canal and Congress streets in Chicago, he drove the cab to Hines Hospital in Maywood in order to visit a friend; he remained at the hospital for one-half hour and then drove back toward downtown Chicago on the Congress Expressway; while driving back, and before he had reached the city limits of Chicago, the steering column suddenly locked in a left position and his cab crashed.

He was taken to the Oak Park Hospital and while in the emergency room, a blood sample was taken from him by a medical technologist. The technologist analyzed the sample and found that it contained about 0.22 per cent alcohol. A pathologist testified that in his opinion an individual with that percentage of blood alcohol would be presumed to be under the influence of alcohol. The statute relating to driving while intoxicated currently establishes a legislative presumption that if upon chemical analysis of a person's blood it is found to contain more than 0.10 per cent of alcohol, "it shall be presumed that the person was under the influence of intoxicating liquor." Ill. Rev. Stat. 1967, ch. 95½, par. 144.

The respondent contends that the claimant, in going to visit his friend, was on a mission of his own at the time of the accident, and that the accident did not arise out of and in the course of his employment. The respondent also contends that the claimant took himself out of the course of his employment because he had increased the hazards of his employment by being intoxicated.

The claimant argues that although the visit to his friend was a personal deviation, he had returned to the course of his employment when the accident occurred because he was then at a point where a taxi driver could reasonably be ex-

pected to be. He also contends that intoxication is not a defense to a claim for workmen's compensation unless the employee is so incapacitated that he cannot perform his duties. We need not decide whether the claimant's intoxication is a defense to his claim, for we think that in any event the claimant had deviated from the course of his employment and had not yet returned when the accident occurred.

We stated in *Ace Pest Control, Inc.* v. *Industrial Com.* (1965), 32 Ill.2d 386, 388, that injuries to employees arise out of and in the course of their employment, and therefore are compensable, if they "arise out of acts which the employee is instructed to perform by his employer; acts which he has a common law or statutory duty to perform while performing duties for his employer [citations]; or acts which the employee might be reasonably expected to perform incident to his assigned duties." It is clear that the claimant, in going out to the hospital to visit a friend, was not acting under express instructions, or pursuant to a common law or statutory duty. Nor could his visit be reasonably characterized as incidental to his assigned duties. The question is whether, at the time of the accident, he had returned from his deviation so that he could be said to have been in the course of his employment.

The majority of compensation cases in the various States hold that when an employee embarks upon a personal side trip, he does not return to the course of his employment until the trip is completed. Although a minority of cases have held that an employee re-enters the course of his employment when he begins the journey back toward the employment destination, the minority decisions generally do not involve a clearly defined personal side trip. (Larson, Workmen's Compensation Law, sec. 19.33.) This court has adopted the majority view. *Public Service Co. of Northern Illinois* v. *Industrial Com.* (1946), 395 Ill. 238.

In this case we think the claimant had not returned to

the course of his employment. He had not re-entered the city limits of Chicago; he was only authorized to operate within the city of Chicago, and he testified that he knew this. Although he testified that he had, on two occasions, picked up passengers outside of the city which he recorded on his trip sheet, and for which the company had accepted its share of the fares, we do not think that two isolated instances are enough to show that the company had consciously disregarded its policy. The payroll supervisor for the company testified that the trip sheets are used for payroll purposes, and that no check is made as to the nature of the trips unless there is a specific inquiry.

The claimant contends that it is reasonable to expect a taxi driver to be on the Congress Expressway since the city's boundaries are irregular and the expressway sometimes affords the shortest route between two points within the city. Although it may be reasonable for a cab driver to be on the expressway in taking a passenger to a destination, or in going to a particular spot where he hopes to pick up passengers, this was not the situation of the claimant.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*