YVONNE MILLEN, Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (Hydronics Supply *et al.*, Appellees).

Second District (Industrial Commission Division)   No. 2—84—118WC

Opinion filed May 22, 1984.

Harlan Heller, Ltd., of Naperville (H. Kent Heller, of counsel), for appellant.

Kane, Doy & Harrington, Ltd., of Chicago (Steven H. Shanok, of counsel), for appellee Hydronics Supply.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (Louis J. Cohn, of counsel), for appellee Kitchen Distributors of America.

JUSTICE McNAMARA delivered the opinion of the court:

We are asked to decide whether the Industrial Commission's decision that decedent's death did not arise out of and in the course of his employment is contrary to the manifest weight of the evidence.

On September 20, 1979, between 7 a.m. and 7:20 a.m., Joe Millen was involved in a fatal accident while driving in Kendall County on Illinois Route 47 between Galena Road and U.S. Highway 30. On that day, decedent was employed by both respondents, Hydronics Supply Company and Kitchen Distributors of America.

Petitioner, Yvonne Millen, on behalf of Dustin Millen, decedent's seven-year-old son, filed an application for adjustment of claim against respondents under the Workers' Compensation Act. An arbitrator denied compensation on the ground that the accidental injuries causing decedent's death did not arise out of and in the course of his employment, and the Commission affirmed that decision. The circuit court of Kendall County confirmed the Commission's decision, and petitioner appeals.

At the arbitration hearing, Arnold Millen, president of Hydronics and decedent's father, testified that Hydronics is a wholesale plumbing and heating supply business located on Galena Road in Plano, Illinois. Decedent worked for Hydronics on a part-time basis, earning $150 per week to assist during the morning rush period from 7:30 a.m. to 9 a.m. Decedent's activities for Hydronics were limited to pulling orders and answering the telephone. He was not involved in outside sales.

Arnold Millen further testified that on its premises Hydronics provided a showroom for Kitchen Distributors, whose main office and warehouse were in Itasca, Illinois. Decedent was employed by Kitchen Distributors to sell preboxed factory cabinets on a commission basis and visited homes of potential customers to make such sales. Arnold Millen had helped decedent obtain employment with Kitchen Distributors, but thereafter had nothing to do with that employment. Arnold Millen had no knowledge of decedent's activities on the morning of the fatal accident. In his opinion, the accident occurred at a location on a direct route from decedent's home to Hydronics.

Maureen Raspiller, Dustin's babysitter, testified that on September 19, 1979, she discussed with decedent the possible exchange of her van for decedent's blue compact car on that evening. It was easier for decedent to transport cabinets in her van, and they had exchanged vehicles for that purpose in the past. Later that day, decedent told Raspiller that he would pick up the cabinet that night and exchange vehicles on the following morning.

On the morning of the accident, decedent dropped Dustin off at approximately 6:40 a.m. and gestured at his watch. He did not talk to Raspiller and they did not exchange vehicles. Raspiller saw a kitchen cabinet in the back of his car, but she did not know where decedent was going that morning.

On review before the Commission, David Nebel testified that decedent had visited his home twice to discuss kitchen cabinets. The second visit occurred in September 1979 before 8 a.m. when decedent brought a sample cabinet in a small blue car. Nebel did not know what date in September the visit took place. Nebel learned of decedent's death when he called Hydronics about three weeks after the visit.

The Commission found that at the time of the accident decedent was not engaged in any job-related activity on behalf of Hydronics. The Commission further found that, although decedent was known to visit potential customers at their homes to sell cabinets, petitioner failed to show by a preponderance of the evidence that on the morning of the accident decedent was on his way to visit a potential customer before reporting to work at Hydronics.

■■ ■ Petitioner had the burden to prove by a preponderance of the evidence that decedent's injuries arose out of and in the course of his employment. (*White v. Industrial Com.* (1982), 88 Ill. 2d 523, 431 N.E.2d 368.) An injury is received in the course of one's employment when it occurs within the period of employment, at a place the employee may be reasonably in the performance of his duties, and while

he is fulfilling those duties or engaged in something incidental thereto. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 362 N.E.2d 325.) Generally, injuries incurred by an employee at a place off the employer's premises while traveling to and from work do not arise out of and in the course of employment. (*Commonwealth Edison Co. v. Industrial Com.* (1981), 86 Ill. 2d 534, 428 N.E.2d 165; *Eisenberg v. Industrial Com.* (1976), 65 Ill. 2d 232, 357 N.E.2d 533.) An exception to that rule, which petitioner urges is applicable here, has been followed when travel is necessitated by employment, such as in the case of a traveling salesman driving to or from a sales call. *Urban v. Industrial Com.* (1966), 34 Ill. 2d 159, 214 N.E.2d 737.

Petitioner argues that decedent's accidental death arose out of and in the course of his employment as a traveling salesman. She maintains Raspiller's testimony that the day before the accident decedent discussed an exchange of vehicles, that on the morning of the accident decedent indicated by gesture that he was in a hurry, and that there was a cabinet in his car at that time are facts which established that decedent was on his way to visit a potential customer before reporting to work at Hydronics.

It is the function of the Commission, however, to assess credibility and draw reasonable inferences and conclusions from the testimony. The decision of the Commission will not be disturbed unless its findings are contrary to the manifest weight of the evidence. (*City of Streator v. Industrial Com.* (1982), 92 Ill. 2d 353, 442 N.E.2d 497.) In the present case, even if decedent is considered a traveling salesman, there was ample evidence to support the Commission's finding that he was not in the course of his employment for either respondent at the time of his accidental death.

As to Hydronics, the evidence clearly established that at the time of the accident decedent was not engaged in any job-related activity since his job duties with that employer were limited to those in the office. We find no merit in petitioner's contention that respondents were such closely linked enterprises that decedent was acting for both of them at the time of the accident. The testimony of Arnold Millen, petitioner's own witness and decedent's father, does not support such an argument.

The Commission could also reasonably conclude that decedent was not engaged in a job-related activity for Kitchen Distributors. Decedent began work at Hydronics at 7:30 a.m. After dropping his son off at the babysitter's home around 6:40 a.m., decedent was involved in an accident while traveling on a direct route from his home to his

job at Hydronics. The accident occurred between 7 a.m. and 7:20 a.m., shortly before the time decedent was scheduled to report at Hydronics. Based on these facts, the Commission could reasonably infer that decedent was not driving to or returning from a sales call, but was merely on his way to work at Hydronics. The Commission therefore could properly conclude that the accident did not arise out of and in the course of his employment. We will not set aside the decision of the Commission merely because it is possible to draw different inferences from the evidence presented. (*Doyle v. Industrial Com.* (1983), 96 Ill. 2d 364, 449 N.E.2d 1352.) On the record before us we cannot say that the Commission's determination was contrary to the manifest weight of the evidence.

For the reasons given, the judgment of the circuit court of Kendall County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

SEIDENFELD, P.J., BARRY, WEBBER, and KASSERMAN, JJ., concur.