BRADLEY PRINTING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Betty Dunn, Wife of James O. Dunn, Deceased, Appellee).

Second District (Industrial Commission Division)   No. 2—88—1138WC

Opinion filed July 21, 1989.—Rehearing denied September 19, 1989.

Mark A. Braun, of Braun, Lynch, Smith & Strobel, Ltd., of Chicago, for appellant.

Frank J. Wiedner, of Wiedner & McAuliffe, and Industrial Commission of Illinois, both of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Betty Dunn, brought an action under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) seeking to recover death benefits for fatal injuries sustained by her husband, James Dunn. The arbitrator found that Dunn's death arose out of and in the course of his employment with Bradley Printing Company and awarded benefits in the amount of $456.33 per week to be

paid to claimant on her behalf and on behalf of minor children until the sum of $250,000 has been paid or until the period of 20 years has passed, whichever is greater. The arbitrator additionally awarded $1,750 for burial expenses. The arbitrator's findings and award were upheld by the Industrial Commission (Commission), and the circuit court of Du Page County confirmed the decision of the Commission. Bradley appeals, alleging that the Commission's finding that Dunn's death arose out of and in the course of his employment is against the manifest weight of the evidence.

In August 1983, Dunn was employed as a salesman for Bradley. Bradley salesmen are paid on a commission basis. Dunn worked primarily on accounts in the Chicago area, but there were no limitations on his territory. His customer and prospect list included six names outside the Chicago area, two in Indiana, and one each in Michigan, Florida, Arizona and Minnesota. Peter Schon, Dunn's sales manager, testified that Dunn had informed him that he was working on the accounts in Michigan and Indiana.

In July 1983, Dunn advised Schon that he would be vacationing in Three Rivers, Michigan, during the first half of August 1983. Schon testified that Dunn also informed him that he intended to combine work and vacation at that location. Claimant testified that Dunn arrived at Three Rivers on August 6, 1983. For the next 10 days, Dunn traveled between Three Rivers and Chicago twice. When he was in Three Rivers, Dunn made several telephone calls to customers. Claimant testified that during previous years, Dunn had followed a similar practice of commuting between Three Rivers and Chicago and of making business telephone calls when in Three Rivers.

On August 16, 1983, Dunn drove to Chicago from Three Rivers. On the way to Chicago, Dunn took a family friend to O'Hare airport. He then called on a customer in Aurora and finally proceeded to Bradley. Schon testified that he spoke with Dunn that afternoon on the company premises. Dunn advised Schon that he was picking up proofs for a prospective client. Dunn indicated that he wanted to review the proofs personally and hand deliver them to the client.

On August 17, 1983, Dunn attended a scheduled sales meeting at Bradley. Kenneth Vander Wheele, Bradley's vice-president of finance, testified that it was company policy for salesmen to attend scheduled meetings unless excused by Schon or another principal. Vander Wheele stated, however, that attendance records were not kept of these meetings and that he knew of no disciplinary action if a salesperson did not attend a meeting. Schon stated, however, that it was his practice to contact any salesperson who did not attend a sales

meeting. He would demand an explanation for the absence and personally would ensure that the person received and understood the information presented at the meeting. Approximately 20 of the 28 salesmen attended the August 17 meeting.

Schon testified that following the sales meeting, Dunn advised him of a successful meeting with a prospective customer on the previous day. Dunn further stated that after leaving the office, he intended to make several customer stops on the return trip to Three Rivers. Later that afternoon, Dunn sustained fatal injuries in an automobile accident which occurred on the Indiana tollroad I-80.

Following Dunn's death, claimant met with Schon and Richard Joutras, the chairman of the board at Bradley. Claimant brought Dunn's work in progress and all other items connected with his business. Claimant testified that Joutras represented to her that Bradley agreed to share the commissions to which Dunn was entitled. She stated that Joutras acknowledged that Dunn was working at the time of the accident and that additional compensation would be provided for the loss. Joutras testified that he recalled the meeting but did not remember stating anything specific with regard to Dunn being within the scope of his employment at the time of his death.

The arbitrator entered an award based on his finding that in light of all the circumstances, the fatal injuries sustained by Dunn arose out of and in the course of his employment with Bradley. The arbitrator's findings were upheld by the Commission and subsequently were confirmed by the circuit court.

Bradley first argues that the Commission incorrectly based its conclusion on the assumption that Dunn's August 17, 1983, trip from Chicago to Three Rivers had a business purpose. Bradley maintains that at the time the accident occurred, the business character of Dunn's trip had ended and the trip had become personal.

Initially we note that Bradley urges this court to view the August 16 trip from Three Rivers to Chicago and the August 17 trip from Chicago to Three Rivers as distinct units. In our view, however, these trips were both part of one cohesive trip and should not be analyzed as separate units.

■ Generally, whether an incident arose out of and in the course of employment depends first upon the purpose of the trip taken. (*Boyer Chemical Laboratory Co. v. Industrial Comm'n* (1937), 366 Ill. 635, 10 N.E.2d 389.) The test for determining the purpose of a trip which has both personal and business characteristics, first enunciated in *Marks' Dependents v. Gray* (1929), 251 N.Y. 90, 93-94, 167 N.E. 181, 183, is as follows:

"If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. [Citation.] If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

We believe that Dunn's employment with Bradley created the necessity for the trip from his temporary residence in Three Rivers to Chicago. The Commission was presented with evidence that Dunn notified Bradley he would be in Three Rivers the first part of August 1983 and that he intended to, and did, conduct business from that location. During the next week and a half, Dunn commuted between Three Rivers and Chicago for business purposes. On August 16, 1983, he left Three Rivers and proceeded to Chicago for the purpose of dropping a friend off at the airport, conducting business, and attending the Bradley sales meeting. The record reveals that on August 16, Dunn in fact went to the airport, met with a customer, and then performed various other business activities and that on August 17, he attended the sales meeting. After the meeting, Dunn informed his manager that he intended to make business calls. In view of these activities, we conclude that there was ample evidence to support the Commission's determination that the trip beginning on August 16 had a business purpose.

Bradley nonetheless maintains that because the sales meeting was not mandatory, Dunn's decision to attend that meeting was purely personal and, therefore, the purpose of his trip was personal. One of Bradley's officers, however, testified that salesmen were expected to attend the meetings and that absences from the meetings required prior approval. Thus, the decision to return to Chicago to attend the sales meeting was not a personal decision on Dunn's part. Rather, the decision to attend the meeting was motivated by business concerns.

Bradley additionally contends that because Dunn took a friend to the airport before conducting any business, the purpose of his trip was personal. We believe, however, that this personal deviation does not alter the overall character of the trip. The deviation was completed and the business route resumed once Dunn proceeded from the airport to the business destination.

Bradley also maintains that even if the trip had a business character, the Commission's conclusion that Dunn's accident arose out of and in the course of his employment with Bradley was erroneous.

Bradley urges that Dunn's activities at the time of his death were not reasonably within the course of his employment. Bradley concludes that Dunn had completed any business and he had begun the return trip to his vacation home.

■ Generally, an employee's injury sustained in transit between the employee's home and place of employment does not arise out of and in the course of employment, and therefore, is not covered under the Act. (*Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 210 N.E.2d 209.) An exception to that rule exists when the employee is a traveling employee. In such situations, courts will not separate the going to and coming from work from the moment the traveling employee actually is calling on a customer. (*Urban v. Industrial Comm'n* (1966), 34 Ill. 2d 159, 214 N.E.2d 737.) In order to be compensable, however, the injury must be suffered in the doing of something which the employee reasonably may do at any time during which he is employed and at a place where he reasonably may be during that time. *Urban v. Industrial Comm'n* (1966), 34 Ill. 2d 159, 214 N.E.2d 737; *J.E. Porter Co. v. Industrial Comm'n* (1921), 301 Ill. 76, 133 N.E. 652.

■ The question of whether an injury arose in the course of employment is a question of fact, and the Commission's resolution on that issue will not be disturbed on appeal unless manifestly against the weight of the evidence. (*Aaron v. Industrial Comm'n* (1974), 59 Ill. 2d 267, 319 N.E.2d 820.) The test of whether a decision of the Commission is supported by the manifest weight of the evidence is not whether the reviewing court might reach the opposite conclusion on the same evidence, but whether there is sufficient factual evidence in the record to support the decision. *Benson v. Industrial Comm'n* (1982), 91 Ill. 2d 445, 440 N.E.2d 90.

■ We believe that there is sufficient evidence to support the Commission's decision. Dunn's fatal accident occurred in Indiana, on the route which he normally used to go to his Three Rivers temporary residence. Nevertheless, the evidence presented at trial indicates that Dunn was a traveling employee engaged in a course of conduct consistent with his employment. Therefore, in our judgment, his activities remained compensable. (See *Urban v. Industrial Comm'n* (1966), 34 Ill. 2d 159, 214 N.E.2d 737.) We believe that at the time of his death, Dunn was conducting an activity which he reasonably might be expected to do as part of his employment, and he was at a place where he reasonably might be at that time. See *Robinson v. Industrial Comm'n* (1983), 96 Ill. 2d 87, 449 N.E.2d 106.

Bradley was aware both of Dunn's temporary residence in Three Rivers and of his commute from Three Rivers to Chicago to conduct

business. Furthermore, Dunn's activities on August 16 and August 17 were such that Bradley reasonably could have foreseen their occurrence. Dunn conducted business, met with his manager, and attended a scheduled sales meeting. After the sales meeting on August 17, he informed the sales manager that he intended to make several business calls on the return trip to Three Rivers. The accident occurred in Indiana, a State in which Dunn had prospective clients.

There is no indication that Dunn had embarked upon a course of conduct incompatible with his work at any time after the sales meeting and prior to the automobile accident. Thus we conclude that the Commission properly determined that Dunn's activities that day were neither unforeseeable nor unreasonable and that he remained in the course of his employment. Accordingly, we find that the Commission's determination is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.