THERESA T. BAILEY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Midland-Ross Corporation, Appellee).

First District (Industrial Commission Division)   No. 1—92—1441WC

Opinion filed May 21, 1993.

Cronin & Peters, of Chicago, for appellant.

Roddy, Power, Leahy, Guill, Zima & Gifford, Ltd., of Chicago (Joseph E. Detuno and Alan D. Kalinoski, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellant, Therese T. Bailey (the claimant), filed an application for adjustment of claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), contending her husband, William J. Bailey (the decedent), suffered fatal injuries arising out of and in the course of his employment with the appellee, the Midland-Ross Corporation (the employer). Following a series of hearings, the arbitrator denied compensation. On review, the Industrial Commission (Commission) affirmed and circuit court confirmed. The claimant now appeals to this court.

The claimant testified her husband, the decedent, began working for the employer in June of 1984. The decedent worked in the surface combustion division of Midland-Ross. The employer is involved in the manufacture and installation of industrial furnaces. The decedent's first work assignment was at the Union Oil plant in Lemont, Illinois, as a construction supervisor. The claimant testified the decedent was

transferred to Toledo, Ohio, in December of 1984, after being promoted to the title of project engineer. Subsequently, he was sent to Structural Metals, Inc. (SMI), in Sequin, Texas.

While in Texas, the employer paid for the decedent's lodging and all of his expenses, including a rental car. The decedent was given the option of flying home every other weekend at the employer's expense. The claimant testified the decedent came home for the Memorial Day weekend in May of 1985.

The record shows that at sometime after 11:30 p.m. on June 1, 1985, the decedent was traveling southeast on U.S. 87 about 11 miles north of Cuero, Texas. From the crash evidence, the investigators opined the decedent's car crossed the center line into the northwest bound lane of traffic. His car collided with an oncoming car. Both cars caught fire. The decedent and two persons in the other car were all burned beyond recognition. At the time of the collision, the decedent was traveling in the opposite direction from his apartment in Sequin.

The claimant testified that on June 2, 1985, a Tinley Park police officer came to her home to inform her that the decedent had been killed in an auto collision in Texas. On June 3, 1985, the claimant received a phone call from Dave Woodward, a contract engineer with the employer. The claimant testified Woodward related to her some of the details surrounding the decedent's death. The claimant testified that Woodward told her the project at Sequin, Texas, had been completed at the end of May, and that SMI had been very pleased with the work the decedent had done. She stated that Woodward told her that SMI had decided to throw a barbeque for the decedent on Saturday night, June 1, 1985, in Cuero, Texas.

She further testified Woodward told her the decedent was killed on his way back to his apartment in Sequin when the car he was driving collided with another car. At the decedent's funeral, which Woodward attended, Woodward told the claimant that persons who attended the barbeque told him that the decedent seemed fine when he left the barbeque.

Dave Woodward testified that SMI had requested the use of nonunion labor for the installation of the industrial furnace. By agreement, the employer was prohibited from using nonunion labor. Therefore, an arrangement was agreed to whereby SMI received bids on the installation, which the employer reviewed. The employer recommended Commercial Contracting Company (CCC); however, SMI did the actual hiring of CCC. The decedent was sent to SMI to make sure the furnace was properly installed. The decedent was the only repre-

sentative of the employer continuously at the site. He gave advice to CCC employees on installing the furnace.

Woodward denied that the conversation with the claimant on June 3, 1985, dealt with the facts surrounding the decedent's death. Woodward testified he did not tell the claimant that SMI had wanted to honor the decedent with a barbeque. Woodward testified that no one told him the barbeque was held to honor the decedent. Woodward further testified that to his knowledge the barbeque had been hosted by Larry Palma, a foreman who worked for CCC, not SMI. Woodward testified there would have been no business advantage to the employer if the decedent attended a barbeque hosted by CCC. The decedent was not a salesman for the employer. CCC was not their customer, and they had no direct business relationship with CCC.

The Texas medical examiner's report indicated the decedent had a blood-alcohol level of .387. The record shows the decedent's body was severely damaged by the fire. At arbitration, Dr. Vincent Papa, a toxicologist, testified that obtaining an uncontaminated blood sample from the charred remains would be very difficult. He testified the burning of the body would likely affect the sample. Dr. Jeffery Coe testified that after reviewing the medical examiner's report he agreed with the examiner's finding of a high blood-alcohol level and that acute alcohol intoxication contributed to the accident.

The arbitrator denied compensation, finding the decedent's injuries did not arise out of and in the course of his employment. The arbitrator found the decedent had completed his job assignment prior to June 1, 1985; that he attended a party which did not further his employer's interest and of which the employer had no knowledge; and that at the time of his death he was traveling in a direction opposite from his local residence and his next job assignment in Alabama. The arbitrator also noted the high blood-alcohol level in the autopsy report. The arbitrator concluded that the decedent's activity at the time of his death was "clearly unanticipated, unforeseeable and unreasonable activity not normally to be expected of a traveling employee."

After surveying the applicable law regarding traveling employees, the Commission affirmed finding the claimant had failed to sustain her burden of proving that the auto collision arose out of and in the course of the decedent's employment. The Commission noted that the record contained "utterly no indication" of why the decedent was traveling in the direction he was at the time of the collision. The Commission found it significant that at the time of the collision the decedent was driving in a direction away from his lodgings and his next job assignment. Under these facts, the claimant had failed to es-

tablish the decedent was operating in the course of his employment at the time he was killed.

The Commission went on to find it significant that there was no evidence the decedent attended the barbeque at the direction of the employer. Since the decedent's duties did not include sales, the Commission found the decedent was not involved in a job-related activity when he attended the barbeque and that the employer received no "significant benefit" from the decedent's attendance.

Given the Commission found the decedent's death did not occur in the course of his employment, it found it did not have to reach the employer's intoxication defense. The Commission, citing the questionable accuracy of the autopsy report, found there was not enough evidence in the record to support a finding that, as a matter of law, the decedent's death arose out of his drunken condition. The circuit court in a written opinion confirmed. The claimant appeals the denial of benefits.

The claimant contends the Commission's finding that the decedent's death did not occur in the course of his employment is contrary to the manifest weight of the evidence. She argues the decedent's activity at the time of his death was reasonably anticipated and foreseeable. The claimant argues the attendance at the barbeque was a reasonable job-related activity. She contends the Commission erroneously attached importance to whether the employer received a "significant benefit" from the decedent's attendance at the barbeque. The claimant contends the direction of the decedent's travel at the time of his death is irrelevant, and that compensation has been paid in cases where the purpose of a decedent's travels was unknown. See *David Wexler & Co. v. Industrial Comm'n* (1972), 52 Ill. 2d 506, 288 N.E.2d 420; *Wright v. Industrial Comm'n* (1975), 62 Ill. 2d 65, 338 N.E.2d 379.

Injuries to employees whose duties require them to travel away from home are not governed by the rules applicable to other employees. (*Howell Tractor & Equipment Co. v. Industrial Comm'n* (1980), 78 Ill. 2d 567, 403 N.E.2d 215.) Under the standard enunciated in *Ace Pest Control, Inc. v. Industrial Comm'n* (1965), 32 Ill. 2d 386, 205 N.E.2d 453, the test for determining whether an injury to a traveling employee arose out of and in the course of his employment is the reasonableness of the conduct in which the employee was engaged and whether it might normally be anticipated or foreseen by the employer. (*U.S. Industries, Production Machine Division v. Industrial Comm'n* (1968), 40 Ill. 2d 469, 240 N.E.2d 637.) Therefore, a traveling employee may be compensated for injuries sustained while

he was engaged in recreational activities as long as those activities were reasonable and foreseeable. See *David Wexler & Co. v. Industrial Comm'n* (1972), 52 Ill. 2d 506, 288 N.E.2d 420; *Wright v. Industrial Comm'n* (1975), 62 Ill. 2d 65, 338 N.E.2d 379.

■ The burden of establishing compensability rests upon the claimant, and proof that he would not have been at the place where the injury occurred but for his employment is not alone sufficient. (*Howell Tractor & Equipment Co. v. Industrial Comm'n* (1980), 78 Ill. 2d 567, 403 N.E.2d 215.) The decision of the Commission on a question of fact will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033.

In the instant case, the issue is whether the decedent's activity at the time he was killed was reasonable and whether such activity was of a type normally to have been anticipated or foreseen by the employer.

The Commission in this case placed primary significance on the fact that at the time of the collision, there is no indication why the decedent was traveling in the direction he was. He had apparently left the barbeque and was driving in a direction away from his residence in Sequin, Texas. Woodward testified the decedent's belongings at the apartment were not packed. At the time of his death, he was not traveling in the direction of Alabama, his next job assignment. Therefore, it could not be inferred he was on his way to the next jobsite. In sum, this conduct was not reasonable nor would it normally be anticipated or foreseen. His travels after leaving the barbeque were apparently unrelated to returning to his lodgings. There is no way of knowing where he was going.

In *David Wexler & Co. v. Industrial Comm'n* (1972), 52 Ill. 2d 506, 288 N.E.2d 420, the decedent, a traveling salesman, was killed in an auto collision in Omaha, Nebraska, on Memorial Day. At the time of his death, the decedent was wearing a short-sleeve shirt and there was golfing and fishing equipment in the car. He was traveling in the direction of the motel he was staying at, on the street on which the motel was located. The Commission awarded benefits. The supreme court affirmed, finding the issue was one of fact for the Commission to decide and that the Commission's finding was not against the manifest weight of the evidence.

The record in *Wexler* contained the deposition of the motel manager, who testified the decedent had told him that he was going to an appointment. The employer had failed to raise a hearsay objection in the prior proceedings.

The court went on to find that even if the decedent had been engaged in recreational activity, it was not unreasonable or unanticipated that the decedent would partake of such activity on a holiday. The court stated a traveling employee's protection under the Act is not limited to physical acts connected with performing his job-related duties which occur during his normal business hours.

In *Wright v. Industrial Comm'n* (1975), 62 Ill. 2d 65, 338 N.E.2d 379, the decedent was a field erection supervisor. The employer manufactured industrial machines. The decedent's duties consisted of supervising the installation of the machines in the purchasers' factories. The decedent was in Tennessee on an assignment when he was killed in a collision on a Saturday, some six miles from his rented motel room. The incident occurred around noon on a sunny day. It was unclear why the decedent was driving on that road. However, there were indications the decedent may have been going for some welding equipment at the time he was killed. The employer presented evidence to refute these facts.

The Commission denied benefits and circuit court confirmed. The supreme court reversed. Citing, *inter alia, Ace Pest* and *Wexler*, the court found it neither unreasonable nor unforeseeable that the decedent would be driving his car within six miles of his motel, including for recreational purposes. The court held that even though the cause of the accident was unknown, this did not preclude compensation. The court stated the facts were undisputed. The court concluded that the issue was one of law and that as a matter of law the death arose out of and in the course of the decedent's employment.

In *U.S. Industries, Production Machine Division v. Industrial Comm'n* (1968), 40 Ill. 2d 469, 240 N.E.2d 637, the supreme court reversed the Commission's award of benefits to a claimant who was injured while undertaking a midnight pleasure drive in unfamiliar, mountainous terrain. The court found the drive was a "clearly unanticipated, unforeseeable and unreasonable activity not normally to be expected of a traveling employee." 40 Ill. 2d at 475.

■ In the instant case, the decedent's activity at the time of the collision was more akin to those of the claimant in *U.S. Industries* than the decedents in *Wexler* and *Wright*. The claimant testified she was told by Woodward that the barbeque was held to honor the decedent for the fine job he had done. Woodward denied telling this to the claimant. In fact, he testified no one told him the barbeque was held to honor the decedent. He testified to his knowledge the barbeque was hosted by an employee of CCC, while the employer had a business relationship with SMI. Woodward testified there was no business

advantage to the employer of the decedent attending a barbeque hosted by CCC. There was no other evidence presented on this discrepancy. It was within the province of the Commission to find the testimony of Woodward more credible than that of the claimant.

Even if the barbeque was job related, at the time the decedent was killed, he had left the barbeque and was not heading back to his lodgings. There is no indication of where he was going at approximately 11:30 p.m. The Commission's finding that this activity was unreasonable and unforeseeable is not against the manifest weight of the evidence.

The parties argue rather extensively about the intoxication evidence. This was not the basis for the Commission's decision and we need not address the issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.